## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CRANBERRY PROMENADE, INC.,       CIVIL DIVISION
NAP ASSOCIATES, INC.,
NAP ASSOCIATES 2, INC., and        NO.
THOMAS W. PETRARCA. d/b/a,
THE PETRARCA COMPANIES,

            Plaintiffs,

                          **COMPLAINT AND JURY DEMAND**

      v.

CRANBERRY TOWNSHIP,
RICHARD HADLEY,
JOHN SKORUPAN, JOHN W.  MILIUS,
DAVE ROOT, BRUCE MAZZONI,
RON HENSHAW and JOHN K. TRANT, JR.

         Defendants

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

The Plaintiffs, Cranberry Promenade, Inc., NAP Associates, Inc., NAP Associates 2, Inc., and Thomas W. Petrarca, d/b/a/ The Petrarca Companies (collectively the "Plaintiffs"), by their attorneys Reed Smith, LLP, set forth the following as their Complaint against the Defendants, Cranberry Township, Richard Hadley, John Skorupan, John W.  Milius, Dave Root, Bruce Mazzoni, Ron Henshaw and John K. Trant, Jr.

## NATURE OF THE ACTION

1.     This case arises from a scheme by which the Plaintiffs were defrauded and deprived of the use and value of their property (the "Subject Property") through the misuse of governmental and personal power by, and unlawful actions taken, and false representations made by, Cranberry Township, members of its Board of Supervisors and several of its agents and employees (collectively the "Defendants").  The Defendants' actions were intended to, and did deprive Plaintiffs of, the value and lawful right to use the Subject Property so that parts of the

Subject Property could be seized or otherwise made available for use by the developer of a proposed much larger adjacent development, who, in return, promised to secure state funding for millions of dollars in traffic infrastructure improvements desired by the Township, and to promote that much larger development.

2.     Through their conduct, as set forth below, the Defendants conducted or participated, directly or indirectly, in the affairs of an enterprise through a pattern of racketeering activity and conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and Pennsylvania law regarding civil conspiracies.

3.     Moreover, the Defendants' actions have deprived the Plaintiffs of their rights of equal protection under the law, substantive and procedural due process, and the right to protected property interests, all guaranteed under the United States' Constitution in violation of 42 U.S.C. § 1983.

## PARTIES AND NON-PARTY PARTICIPANTS

### I.     **The Plaintiffs**

4.     Plaintiff Cranberry Promenade, Inc. is the owner of an approximately 14.548 acre vacant parcel of property located between Route 228 and Old Mars Road in Cranberry Township, Butler County, Pennsylvania (hereinafter "Parcel 1").

5.     Plaintiff NAP Associates, Inc., is the owner of an approximately 2.869 acre vacant parcel of property located between Route 228 and Old Mars Road in Cranberry Township, Butler County, Pennsylvania (hereinafter "Parcel 2").

6.     Plaintiff NAP Associates 2, Inc., is the owner of an approximately 6.838 acre vacant parcel of property located between Route 228 and Old Mars Road in Cranberry Township, Butler County, Pennsylvania (hereinafter "Parcel 3").

7.      Parcel 1, Parcel 2 and Parcel 3 are contiguous parcels and together are approximately 24.3 acres in area and constitute the Subject Property.

8.      Plaintiff Thomas W. Petrarca is an individual d/b/a The Petrarca Companies (hereinafter the "Petrarca Companies") and is the President and sole shareholder of Cranberry Promenade, Inc., NAP Associates, Inc., NAP Associates 2, Inc., and is authorized to act on behalf of Cranberry Promenade, Inc., NAP Associates, Inc., and NAP Associates 2, Inc. with respect to the use and development of the Subject Property.

## II.    **The Defendants**

9.      Defendant Cranberry Township (hereinafter the "Township") is a Second Class Township located in Butler County, Pennsylvania with a principal place of business at 2525 Rochester Road, Suite 400, Cranberry Township, PA  16066.

10.     Defendant Richard Hadley is an individual and is a member of the Board of Supervisors of Cranberry Township.  Upon information and belief, Defendant Hadley resides in this District.  This Defendant is named in his individual capacity.

11.     Defendant John Skorupan is an individual and is a member of the Board of Supervisors of Cranberry Township.  Upon information and belief, Defendant Skorupan resides in this District.  This Defendant is named in his individual capacity.

12.     Defendant John W. Milius is an individual and is a member of the Board of Supervisors of Cranberry Township.  Upon information and belief, Defendant Milius resides in this District.  This Defendant is named in his individual capacity.

13.     Defendant Dave Root is an individual and is a member of the Board of Supervisors of Cranberry Township.  Upon information and belief, Defendant Root resides in this District.  This Defendant is named in his individual capacity.

14. Defendant Bruce Mazzoni is an individual and is a member of the Board of Supervisors of Cranberry Township. Upon information and belief, Defendant Mazzoni resides in this District. This Defendant is named in his individual capacity.

15. Defendant Ron Henshaw is an individual and is the Director of Community Development of Cranberry Township. Upon information and belief, Defendant Henshaw resides in this District. This Defendant is named in his individual capacity.

16. John K. Trant, Jr. is an individual and is the Chief Strategic Planning Officer of Cranberry Township. Upon information and belief, Defendant Trant resides in this District. This Defendant is named in his individual capacity.

III. **Non-Party Participants**

17. The Simon Property Group, Inc. ("Simon") is a Delaware Corporation with its principal place of business in Indiana. Simon is a major shopping center developer.

18. The Board of Supervisors of Cranberry Township (hereinafter the "Supervisors"), is the duly constituted governing body of the Township and is the approving authority under the Township Zoning Ordinance ("Zoning Ordinance") and the Pennsylvania Municipalities Planning Code ("MPC") with respect to applications for conditional use approval under the Zoning Ordinance, and with respect to applications for land development plan approval under the Township Subdivision and Land Development Ordinance ("Land Development Ordinance") and under the MPC.

19. Daniel D. Santoro is an individual and former Assistant Manager and Director of Planning for Cranberry Township and, upon knowledge and belief, is now employed by Delta Development Group, Inc., a real estate development consultant employed by Simon with respect to its proposed development in Cranberry Township.

20.     In addition to Cranberry Township, the conspiracy to defraud the Plaintiffs (the "Conspiracy") included Defendants Richard Hadley, John Skorupan, John W. Milius, Dave Root, Bruce Mazzoni, Ron Henshaw and John K. Trant, Jr., as well as non-party participants Daniel D. Santoro and Simon (collectively the "Conspirators").

## JURISDICTION AND VENUE

21.     This Court's jurisdiction is based upon 28 U.S.C. § 1331, 18 U.S.C. § 1964(a), 42 U.S.C. § 1983, and 18 U.S.C. §§ 1341, 1343, 1346, and 1951 and applicable principles of supplemental jurisdiction under 28 U.S.C. § 1367(a).

22.     Personal jurisdiction and venue in this District are proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because: (i) the Defendants are found in, have agents in, and/or transact their business and affairs in this District; and (ii) a substantial part of the events or omissions giving rise to the claims for relief occurred in this District.

## BACKGROUND OF THE CRANBERRY-SIMON PARTNERSHIP
## AND FACTUAL BASIS FOR THE COMPLAINT

23.     In 1995, Cranberry Township's consulting traffic engineers prepared a plan evaluating and proposing certain traffic infrastructure improvements proposed to facilitate the development of property in Cranberry Township east of Route 19 and along the Route 228 corridor (the "1995 Route 228 Corridor Plan").

24.     Nothing in the 1995 Route 228 Corridor Plan showed, or contemplated development of, any public road infrastructure across any portion of the Subject Property to provide traffic infrastructure improvements to facilitate the development of Cranberry Township property in the Route 228 corridor.

25.     The 1995 Route 228 Corridor Plan was prepared by the Township's traffic consulting engineers at the request of the Township to do an objective evaluation, e.g., not driven

by any particular real estate developer, of the traffic infrastructure improvements necessary to appropriately develop property in the Township along the Route 228 corridor.

26.     In 1998, a private property owner (hereinafter "CREDCO"), owning property to the north of the Subject Property (e.g., north of Old Mars Road), proposed to develop that property for a large commercial development (hereinafter the "CREDCO Property").

27.     As part of the CREDCO plan, CREDCO submitted to the Township a proposal that, inter alia, proposed that a public road access be created through, and bisecting, the Subject Property, and extending northwardly from Route 228, to provide a direct access from Route 228 through and bisecting the Subject Property to the CREDCO Property (the "CREDCO Road Access").

28.     Neither CREDCO, nor the Township had any right or property interest in the Subject Property or the portion thereof proposed for the CREDCO Road Access, nor, to this day, have any such right or property interest.

29.     Neither CREDCO nor the Township offered to buy, nor, in the case of the Township, did it ever condemn, the portion of the Subject Property required for the CREDCO Road Access bisecting the Subject Property to serve the proposed development of the CREDCO Property.

30.     The CREDCO Road Access bisecting the Subject Property was not shown, nor proposed, in the Township's 1995 Route 228 Corridor Plan showing proposed traffic infrastructure improvements to facilitate the development of the Route 228 corridor.

31.     Instead, in November of 2000, the Township simply designated the land area of the Subject Property corresponding to the CREDCO Road Access bisecting the Subject Property as "Area Reserved for Proposed Public Streets," (the "2000 Official Map Designation") without

compensation to plaintiffs, and in so doing, effectively sterilized the use and development of that portion of the Subject Property, and substantially diminished the ability to use or develop the remaining portion of the Subject Property, because of the prohibitive development effect of that 2000 Official Map Designation.

32.    The CREDCO Property, however, was never developed.

33.    In approximately 2002, Simon came to control property located immediately adjacent to the west of the Subject Property for the purpose of developing an approximately 1 million square foot shopping mall (the "Simon Mall").

34.    As part of the Simon proposal for the development of the Simon Mall, Simon offered to pay for, and to secure funding from the Pennsylvania Department of Transportation for, tens of millions of dollars in traffic infrastructure improvements necessary for the development of the Simon Mall and otherwise desired by the Township (the "Simon Mall Traffic Infrastructure Improvements").

35.    Subsequent to 2002, the Township entered into a partnership with Simon to advance the development of the Simon Mall and to help secure the funding for the Simon Mall Traffic Infrastructure Improvements necessary for the Simon Mall and desired by the Township (the "Cranberry-Simon Partnership").

36.    The Cranberry-Simon Partnership continued uninterrupted through at least the first quarter of 2009 and involved, inter alia, Simon funded, but joint Township-Simon planning and design for the Simon Mall Traffic Infrastructure Improvements, joint Township-Simon requests and lobbying of PennDOT and other agencies for funding, and joint decisions regarding the location and acquisition of land and rights of way necessary for all of the road improvements contemplated by the Simon Mall development.

37.     At least since 2002, Simon has shown on its proposed development plans for the Simon Mall, the construction of a proposed principal vehicular access to the Simon Mall which, as proposed, would bisect and require the use of the Subject Property between Route 228 and the Simon Mall entrance, in a northwesterly direction (the "Simon Mall Access").

38.     The location of the Simon Mall Access was in a different location than the CREDCO Road Access although both essentially bisected the Subject Property.

39.     Neither the Simon Property Group nor the Township, from that time in 2002, and continuing to the time of the filing of this action, had any property right or any other right in the Subject Property allowing either of them to use the Subject Property, or any portion of it, for the creation, or construction, of the Simon Mall Access.

40.     The Simon Mall Access was essential to the Simon Property Group for the development of the Simon Mall.

41.     Without the Simon Mall and the financial undertaking by the Simon Property Group, the funding and construction of the Simon Mall Traffic Infrastructure Improvements which the Township desired, was not feasible.

42.     One of the principal objectives of the Cranberry-Simon Partnership from its inception was to assure that no use or development of the Subject Property was permitted or occurred which would prevent the later use of portions of the Subject Property for the Simon Mall Access.

43.     From 2002 through 2006, the principal Township staff person responsible for, and in fact, spearheading the actions and objectives of the Cranberry-Simon Partnership on behalf of the Township was Daniel Santoro, who, upon leaving the employment of the Township at the end of 2006, immediately became employed by Delta Development Group, the real estate

development and lobbying consultant working for and representing Simon in the Cranberry-Simon Partnership and the implementation of its objectives.

44.     On August 7, 2007, the Petrarca Companies submitted a plan and application to the Township (the "Preliminary Land Development Plan), seeking approval to develop and use the Subject Property for a small retail shopping center of approximately 134,000 square feet in building area (the "Retail Shops"), under the provisions of the Township Land Development Ordinance.  (The proposed building area of development was ultimately reduced to approximately 127,000 square feet).

45.     On August 7, 2007 the Petrarca Companies also submitted an application for Conditional Use approval for the Retail Shops under the provisions of the Township Zoning Ordinance, an additional land use approval required for the Retail Shops (the "Conditional Use Application").

46.     Plaintiffs Cranberry Promenade, Inc. and the Petrarca Companies had previously sought land development approval from the Township to develop Parcel 1 of the Subject Property for retail purposes (the "2003 Development Plan"), which approval was denied by the Township, in October of 2003 and were therefore unable to proceed at that time.

47.     The Subject Property is located in a C-3 Regional Commercial zoning district under the provisions of the Township Zoning Ordinance.

48.     The Subject Property is located in a highly commercially developed portion of the Route 228 corridor in the Township, proximate to the I-79/Route 228 Interchange.

49.     The Subject Property is bounded immediately to the east by an existing more than 500,000 square foot retail commercial development known as Cranberry Commons.

50.     The Subject Property is bounded immediately to the west by the property on which the approximately 1 million square foot Simon Mall was proposed.

51.     The Subject Property is bounded immediately to the south, directly across Route 228, by a Marriott Hotel, and other property already developed, and currently under development, for almost two million square feet of office building development known as the Cranberry Woods Office Park, within which the Westinghouse Corporation is building an almost one million square foot headquarters development (the "Westinghouse Development").

52.     The Subject Property is bounded to the north by the CREDCO Property previously approved for commercial development.

53.     The Preliminary Land Development Plan, submitted by the Plaintiffs to the Township, proposed building and parking improvements with respect to Plaintiffs' proposed development of the Retail Shops on the Subject Property in a configuration that, while providing for vehicular access to and from the Subject Property to Route 228, did not provide access across the entire Subject Property in the configuration and location of the proposed Simon Mall Access. The Plaintiffs believed that the location and sheer size of the proposed Simon Mall Access would not allow an economically feasible development of the Subject Property.

54.     Moreover, since neither Simon nor the Township had any property rights in the Subject Property including in the area where the Simon Mall Access for the Simon Mall was proposed, the Plaintiffs had no obligation or duty to encumber the Subject Property to accommodate the Simon Mall Access.

55.     In 2005 and again in 2006 Simon offered to purchase the portion of the Subject Property from Plaintiffs that included the area of the Simon Mall Access.  Those offers were

declined by the Plaintiffs because selling the area of the proposed Simon Mall Access would not have allowed an economically feasible development of the remainder of the Subject Property.

56.     The Township did not, on or before the date of Plaintiffs' application for development approval, nor has it ever, taken any formal steps to condemn the area of the Subject Property identified as the Simon Mall Access, or offered to buy, or otherwise compensate the Plaintiffs for, that portion of the Subject Property.

57.     Instead, in March of 2007, approximately a year after the Plaintiffs had completed the purchase of the Subject Property, and after the Plaintiffs declined Simon's offer to purchase the portions of the Subject Property where the Simon Mall Access was proposed to be located, the Township, in order to further the Simon Property Group's interests with respect to the development of the Simon Mall, and with the approval of Defendants Supervisors Hadley, Skorupan, Milius, Root and Mazzoni, amended its Official Map for the Route 228 Corridor (the 2007 Official Map Designation"). The 2007 Official map Designation purported to designate as "Reserved for Future Public Road Purposes," a diagonal swath, 300 feet wide at some points, bisecting the Subject Property and located in the exact location proposed, almost a year before, and still then proposed, by Simon Property Group's engineers for the Simon Mall Access, all without compensation to Plaintiffs, and with the intended effect of sterilizing the use and development of that large swath of Plaintiffs' property, and substantially diminishing the ability to use or develop the remaining portion of the Subject Property because of the prohibitive development effect of that 2007 Official Map Designation.

58.     In fact, the Township's 2007 Official Map Designation for the Route 228 Corridor was actually prepared by the Township using the computer assisted design plan of the

Simon Mall Access which had been created by the Simon Property Group's engineers the year before in 2006.

59.     Based upon representations made by representatives of Cranberry Township, written notice of the Township's intended 2007 Official Map Designation was sent by the Township via United States Mail to the Plaintiffs in December of 2006, a few months after the Plaintiffs declined Simon's purchase offer.

60.     The Township's actions, and the Conspirators' conduct in those actions, in disapproving the 2003 Development Plan; designating the swath of the Plaintiffs' Subject Property for the 2007 Official Map Designation, and, as more fully set forth below, ultimately in pretextually reviewing and unlawfully disapproving Plaintiffs' Preliminary Land Development Application and Conditional Use Application for the Retail Shops, was all in furtherance of the Conspirators' objective of preventing any use or development of Plaintiffs' Subject Property that would prevent the later use of the Subject Property for the Simon Mall Access.

61.     Following the Plaintiffs' submission of the Preliminary Land Development Plan application to the Township for approval, the Township and each of the Defendants, with the intended effect of preventing Plaintiffs' development of the Subject Property in any manner inconsistent with the ultimate creation of the Simon Mall Access, engaged in a more than year long, protracted and pretextual serial critique of the Preliminary Land Development Plan and Conditional Use Application for the Retail Shops in the form of a series of so-called "Development Reports" asserting, for example, non-compliance with inapplicable ordinance requirements; repeating alleged Preliminary Land Development Plan and Conditional Use Application deficiencies which had already been fully responded to; providing last minute comments, often on the day of public hearings, with respect to Preliminary Land Development

Plan and Conditional Use Application revisions that had been submitted by the Plaintiffs to the Township sometimes weeks earlier; adding new alleged deficiency comments with regard to Preliminary Land Development Plan and Conditional Use Application elements that had remained unchanged and were not identified by the Township as alleged deficiencies with respect to earlier iterations of the plans; and even renumbering previous Township comments to make less clear which previous alleged deficiencies had been remedied and which allegedly remained.

62.     Those pretextual serial critiques or demands for delays in the approval process were created and communicated by Defendant Henshaw, with the approval of, or at the direction of Defendant Trant, to Defendants Hadley, Skorupan, Milius, Root and Mazzoni, and also sent via the United States mails to Plaintiffs, and/or their agents, on or about July 31, 2007, August 28, 2007, October 29, 2007, October 30, 2007, January 21, 2008, January 25, 2008, February 5, 2008, March 28, 2008, April 10, 2008, June 24, 2008, and August 15, 2008.  Copies of these communications are collectively attached as Exhibit 1.

63.     Defendants Henshaw and Trant, with the approval of each of Defendants Hadley, Skorupan, Milius, Root and Mazzoni, in violation of Pennsylvania Statutory Law, created, and caused to be implemented, a delayed and protracted schedule of short public hearings causing the hearing process with respect to Plaintiffs' application for development approval to be attenuated and drawn out for more than a year, and requiring Plaintiffs in writing, under threat of denial of their development plans, to agree to such unlawful time extensions.

64.     Defendant Henshaw, with the approval of, or at the direction of, Defendant Trant, on or about August 30, 2007, October 8, 2007, October 22, 2007, November 15, 2007, December 12, 2007, January 24, 2008, February 11, 2008, April 24, 2008, June 2, 2008, August 27, 2008,

September 8, 2008, and September 24, 2008, by e-mail, facsimile and/or telephonic

communication, required Plaintiffs to agree to extend the statutory time period otherwise

required for the Township and Defendants Hadley, Skorupan, Milius, Root and Mazzoni conduct

of hearings and taking of actions by the Defendant Township Supervisors, or suffer denial of

Plaintiffs' applications for land development approval for the Retail Shops thereby effectively

delaying the Retail Shops project in the hope and intention of causing it to be withdrawn.  Copies

of documents evidencing these communications are collectively attached as Exhibit 2.

65.     Although not necessary to provide full and adequate vehicular access for the

proposed Retail Shops development, or to accommodate the tiny increment of traffic that might

be associated therewith, the Township and Defendants Henshaw and Trant, with the knowledge

and approval of Defendants Hadley, Skorupan, Milius, Root and Mazzoni, nevertheless insisted,

as a proposed requirement for Preliminary Land Development Plan and Conditional Use

Application approval for the Retail Shops, that the Plaintiffs make part of their plans, and

construct, (i)  a north-south connecter road through, and bisecting, the Subject Property and

connecting Route 228 to Old Mars Road, and (ii) construct an east-west connecter road through,

and bisecting, the Subject Property connecting the proposed Simon Mall property (located to the

west of the Subject Property), with the already developed Cranberry Commons retail

development to the east of the Subject Property, all at an incremental cost to the Plaintiffs of

more than one-half million dollars and requiring that a significant part of the Subject Property be

used for roads unrelated to, and unnecessary for, Plaintiffs' proposed development of the Retail

Shops.

66.     Although not necessary to provide full and adequate vehicular access to the

proposed Retail Shops development, or to accommodate the tiny increment of traffic that might

be associated therewith, the Township and Defendants Henshaw and Trant, with the knowledge

and approval of Defendants Hadley, Skorupan, Milius, Root and Mazzoni, nevertheless insisted,

as a proposed requirement for Preliminary Land Development Plan and Conditional Use

Application approval for the Retail Shops, that the Plaintiffs make part of their plans, and pay for

the construction of, approximately one-half million dollars in off-site traffic improvements to be

made at a location more than one-half mile from the Subject Property.

   67. In addition, although not necessary to provide full and adequate vehicular access

to the proposed Retail Shops development, or to accommodate the tiny increment of traffic that

might be associated therewith, the Township and Defendants Henshaw and Trant, with the

knowledge and approval of Defendants Hadley, Skorupan, Milius, Root and Mazzoni, insisted,

as a proposed requirement for Preliminary Land Development Plan and Conditional Use

Application approval for the Retail Shops, that the Plaintiffs make part of their plans, and pay for

the construction of, major Route 228 widening, lane additions, and Interstate 79 ramp

improvements, all of which traffic improvements were part of a major regional traffic

infrastructure upgrade being considered by PennDot, the necessity for which was not a result of

Plaintiffs' proposed construction of the Retail Shops on the Subject Property, and the cost for

which would be several million dollars.

   68. Plaintiffs advised Defendants Henshaw, Trant and Supervisors Hadley, Skorupan,

Milius, Root and Mazzoni that Plaintiffs would agree to accept, as a condition of approval of the

Preliminary Land Development Plan for the Retail Shops, the requirement that Plaintiffs obtain a

highway occupancy permit from PennDOT authorizing the proposed access to and from the

Retail Shops and Route 228, a PennDOT controlled state highway, thereby evidencing

PennDOT's approval of, and agreement with, that proposed access.

69.     The purpose of the Township and Defendants Henshaw, Trant and Supervisors Hadley, Skorupan, Milius, Root and Mazzoni's imposition of all of the proposed conditions set out in Paragraphs 65-67 above, was to render Plaintiffs' development of the Subject Property totally uneconomic and financially infeasible, and to create a pretextual basis for denying Plaintiffs' request for development approval with respect to the Subject Property, all to "preserve" the Simon Mall Access location and to advance the development interests of the Simon Property Group and the promise of additional traffic infrastructure dollars that it promised to provide, or secure for, the Township.

70.     By development review comparison, although revisions to the Cranberry Woods Office Park development plans necessary to accommodate the proposed 850,000 square foot Westinghouse Development (located directly across Route 228 from the Subject Property) were considered by the Township at virtually the same start time as the Plaintiffs' request for approval of the Retail Shops, and although the revisions to the Cranberry Woods Office Park development added almost 500,000 square feet of office development building area to the building area previously considered by the Township for the Cranberry Woods Office Park, (as compared to the 127,000 square feet of development proposed by Plaintiffs), and although vehicular access to the Cranberry Woods Office Development and the Westinghouse Development is exclusively from Route 228 and, in fact, is from the same intersection with Route 228 as is the proposed access to Route 228 for Plaintiffs' proposed Retail Shops, the Township did not require the developer of the Westinghouse Development to construct, or to pay for, any road improvements of any sort, to Route 228 or the I-79 interchange, as a condition of Township approval, and did not even require the developer of the Westinghouse Development to do a traffic study of the

potential traffic impact of that additional 500,000 square feet, and total 850,000 square feet, of office development on the Route 228 corridor.

71.     From the date of application to the date of approval, the 850,000 square foot Westinghouse Development was approved by the Township in three months.

72.     On December 4, 2008, sixteen months after the Plaintiffs filed their application for Preliminary Land Development Plan and Conditional Use Application approval for the 127,000 square foot Retail Shops, the Plaintiffs filed an action in mandamus and for declaratory judgment in the Court of Common Pleas of Butler County seeking deemed approval of the Preliminary Land Development Plan application and the Conditional Use Application by reason of the failure of the Township Supervisors to hold timely hearings, as required by the MPC, and seeking a declaration that the Township's official map designation of reserved rights of way burdening the Subject Property, including those for the Simon Mall Access, were null and void pursuant to the provisions of Article IV of the MPC.

73.     After the conduct of nine hearings by the Township Supervisors, the number of which hearings was necessitated by the abbreviated hearing time scheduled by the Township Supervisors at each hearing, the Township Supervisors denied Plaintiffs' request for Preliminary Land Development Plan approval for the Retails Shops on February 5, 2009, eighteen months after the date that Plaintiffs filed their application for Preliminary Land Development Plan approval (the "February 5, 2009 Denial").  A copy of the February 5, 2009 Denial is attached as Exhibit 3.

74.     The February 5, 2009 Denial was sent to the Plaintiffs via the United States Mail.

75.     On March 5, 2009 the Township denied the Plaintiffs' Conditional Use Application (the "March 5, 2009 Denial").  A copy of the March 5, 2009 Denial is attached as Exhibit 4.

76.     The March 5, 2009 Denial was sent to the Plaintiffs via the United States Mail.

77.     The Plaintiffs' application for Preliminary Land Development Plan and Conditional Use Application approval satisfied, in all material respects, all of the applicable requirements of the Township Land Development Ordinance and Township Zoning Ordinance.

78.     The actions of the Defendants Township, Henshaw, Trant, Hadley, Skorupan, Milius, Root and Mazzoni, in the conduct of their review of Plaintiffs' Preliminary Land Development Plan application and Conditional Use Application for the Retail Shops, and in the Board of Supervisors' denial of that Preliminary Land Development Plan application and Conditional use Application, were pretextual, intended to, and with the objective and effect of, preventing the development of the Subject Property so that the land required by Simon for the Simon Mall Access would remain undeveloped, thereby facilitating the ultimate development of the Simon Mall and the securing of funding for the Simon Mall Traffic Infrastructure Improvements desired by the Township and Simon, all without compensation to Plaintiffs, all denying Plaintiffs the lawful right to use their property.

79.     Given the facts and circumstances set forth above, the Defendants could not, and did not, act in an unbiased and fair manner as a factfinding tribunal is required to do, and have throughout the proceedings, had an economic self-interest in preventing the development of the Subject Property in order to facilitate the development of the Simon Mall by Simon and the funding of the Simon Mall Traffic Infrastructure Improvements.

80. The Plaintiffs' Preliminary Land Development Plan application and Conditional Use Application, in all material respects, satisfied the requirements of the Township Land Development Ordinance and the Township Zoning Ordinance, and therefore was required to be approved by the Board of Supervisors.

81. The denial by Defendants Supervisors Hadley, Skorupan, Milius, Root and Mazzoni of Plaintiffs' Preliminary Land Development Plan application and Conditional Use Application, and Defendants Henshaw and Trant's alternate "proposal" of conditions of approval, which were unlawful, without nexus to Plaintiffs' proposed development, and the cost of which were massively disproportionate to the value of the proposed development so as to render it manifestly economically unfeasible, were pretextual and based on the Township's intention and objective of preserving the availability, and preventing the Plaintiffs' use and development, of at least that portion of the Subject Property required for the Simon Mall Access, in order to help facilitate the development of the Simon Mall by Simon, and the related securing of funding for the Simon Mall Traffic Infrastructure Improvements desired by the Township.

82. The traffic infrastructure improvements insisted upon by Defendants Henshaw and Trant, with the knowledge and approval of Supervisors Hadley, Skorupan, Milius, Root and Mazzoni and the Township, to be undertaken by, or paid for by, the Plaintiffs as possible requirements of the Township's approval of Plaintiffs' Preliminary Land Development Plan application and Conditional Use Application, were unreasonable requirements and constituted impermissible exactions materially unrelated to the development of the Retail Shops, and intended to, and would have the effect of, making it financially infeasible to develop the Subject Property as Plaintiffs proposed, effectively sterilizing the use and development of the Subject Property, an outcome intended by all the Defendants.

83.     The decision of the Board of Supervisors Hadley, Skorupan, Milius, Root and Mazzoni denying the Plaintiffs' Preliminary Land Development Plan application and Conditional Use Application and Defendants Henshaw and Trant's actions in support of, and intended to provide a pretextual basis for that decision, were arbitrary, unreasonable, in bad faith, against the weight of the evidence, an abuse of discretion and contrary to law, including the requirements of the Township Zoning Ordinance, the Township Land Development Ordinance, and the MPC.

84.     Defendant Trant's unlawful obstruction and interference with Plaintiffs' use and enjoyment of the Subject Property continues virtually to this day as demonstrated by Defendant Trant's communications, in late August of this year, to a church which had approached Plaintiffs to purchase a significant portion of the Subject Property.  In response, Defendant Trant asserted that such church's use of the Subject Property, and access to the Subject Property for that church's use from Route 228, would not be permitted by the Township, thereby discouraging the church's purchase of that portion of the Subject Property.

**COUNT I- RICO**

85.     The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

86.     Each of the Plaintiffs is a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1964(c).

87.     Each of the Defendants is a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) and 1962(c).

88.     At all relevant times, Cranberry Township, Richard Hadley, John Skorupan, John W. Milius, Dave Root,  Bruce Mazzoni, Ron Henshaw, John K. Trant, Jr., Daniel D. Santoro and Simon formed an association-in-fact for the purposes of defrauding and depriving the

Plaintiffs of the use and value of their property, through the misuse of governmental and personal

power by, and unlawful actions taken, and false representations made by the Plaintiffs.  This

association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1962(c).

89.     At all relevant times, this enterprise was in engaged in, and its activities affected,

interstate commerce, within the meaning of RICO, 18 U.S.C. § 1962(c).

90.     At all relevant times, Cranberry Township, Richard Hadley, John Skorupan, John

W.  Milius, Dave Root,  Bruce Mazzoni, Ron Henshaw and John K. Trant, Jr. conducted or

participated, directly or indirectly in the conduct of the enterprise's affairs through a "pattern of

racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), in violation of RICO, 18

U.S.C. §1962 (c).

91.     Specifically, at all relevant times, Cranberry Township, Richard Hadley, John

Skorupan, John W.  Milius, Dave Root,  Bruce Mazzoni, Ron Henshaw and John K. Trant, Jr.

engaged in "racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(1) by engaging

in the acts set forth above.  The acts set forth above constitute a violation of one or more of the

following statutes:  18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. §

1346 (right to honest services); and 18 U.S.C. § 1951 (extortion).  The Defendants each

committed and/or aided and abetted in the commission of two or more of these acts of

racketeering activity.

92.     The acts of racketeering activity referred to in the previous paragraph constituted

a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).  The acts alleged

were related to each other by virtue of common participants, common victims (the Plaintiffs), a

common method of commission, and common purpose and common result of defrauding the

Plaintiffs and enriching the Defendants while concealing the Defendants' fraudulent activities. The fraudulent scheme continued for approximately 7 years.

93.     As a result of the Defendants' violation of 18 U.S.C. § 1962(c), the Plaintiffs suffered substantial injury to their businesses and/or properties within the meaning of 18 U.S.C. § 1964(c), including, but not limited to, diminution of value of their property, legal costs in negotiating and attempting to comply with the Defendants' ever-changing demands, and substantial and irreparable loss of goodwill, real estate development opportunities, and business opportunities with potential purchasers, tenants and customers.

94.     As a result of their misconduct, the Defendants are liable to the Plaintiffs for their losses in an amount to be determined at trial.

95.     Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiffs are entitled to recover threefold their damages plus costs and attorneys fees from the Defendants.

## COUNT II – RICO CONSPIRACY

96.     The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 96 as if fully set forth herein.

97.     At all relevant times, Cranberry Township and the other Conspirators each were associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

98.     Cranberry Township and the other Conspirators committed and caused to be committed a series of overt acts in furtherance of the Conspiracy as set forth herein.

99.     As a result of Cranberry Township and the other Conspirators' violations of 18 U.S.C. § 1962(d), the Plaintiffs suffered substantial injury to their businesses and/or properties

within the meaning of 18 U.S.C. § 1964(c), including, but not limited to, diminution of value of their property, legal costs in negotiating and attempting to comply with the Defendants' ever-changing demands, and substantial and irreparable loss of goodwill, real estate development opportunities, and business opportunities with potential purchasers, tenants and customers.

100.    As a result of the Conspiracy, the Defendants are liable to the Plaintiffs for their losses in an amount to be determined at trial.

101.    Pursuant to RICO, 18 U.S.C. § 1964(c), the Plaintiffs are entitled to recover threefold their damages plus costs and attorneys fees from the Defendants.

### COUNT III- ACTION UNDER 42 U.S.C. § 1983

102.    The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

103.    The Defendants' actions are an arbitrary and irrational abuse of power.

104.    Under color of state law, the Defendants have violated federal law and deprived the Plaintiffs the right of equal protection under the law, substantive and procedural due process, and the constitutionally protected right to protected property interests.

105.    As a result of their actions violating the Plaintiffs' constitutional rights, the Defendants are liable to the Plaintiffs for their losses in an amount to be determined at trial.

### COUNT IV- CLAIM FOR CIVIL CONSPIRACY UNDER PENNSYLVANIA LAW

106.    The Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 106 as if fully set forth herein.

107.     Defendants, Cranberry Township, Richard Hadley, John Skorupan, John W. Milius, Dave Root,  Bruce Mazzoni, Ron Henshaw and John K. Trant, Jr., as well as non-party

participants Daniel D. Santoro and Simon combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.

108.    Cranberry Township and the other Conspirators committed and caused to be committed a series of overt acts in furtherance of the common purpose of the Conspiracy to defraud the Plaintiffs as set forth herein.

109.    Upon information and belief, each of the Conspirators had the intent to defraud the Plaintiffs, which intent was common to all, and each understood that the others had that purpose.

110.    The Conspirators' actions set forth herein are evidence of malice and were done without justification.

111.    As a result of the Conspiracy, the Defendants are liable to the Plaintiffs for their losses in an amount to be determined at trial.

WHEREFORE, the Plaintiffs Pray for relief and judgment against all Defendants as follows:

(1) Compensatory and consequential damages to the Plaintiffs' businesses and properties, including, but not limited to, the reduction in value of their properties, increases in construction and material costs resulting from the delays in the commencement and completion of the Retail Shops, including interest thereon, lost revenue and increased capital costs resulting from the delays in the commencement and completion of the Retail Shops;

(2) An additional amount to be proven at trial to compensate the Plaintiffs for their costs in negotiating and attempting to comply with the Defendants' ever-changing and unjustified demands;

(3) An additional amount to be proven at trial to compensate the Plaintiffs for their substantial and irreparable loss of goodwill and business opportunities with potential purchasers, tenants and customers as a result of the acts and omissions of the Defendants;

(4)  Threefold the damages sustained by the Plaintiffs including, but not limited to, the cost of investigations, the costs of this suit (including reasonable attorneys' fees) and prejudgment and post-judgment interest;

(5) Exemplary and/or punitive damages for the Defendants' intentional, willful, wanton, outrageous or malicious conduct, characterized by their evil or rancorous motive, ill will and intent to injure the Plaintiffs or the Defendants gross recklessness or gross negligence evincing a conscious disregard for the Plaintiffs' rights;

(6)  Reasonable attorneys' fees and costs; and

(7)  Any other relief as the Court deems just and proper.


Respectfully submitted,


/s/ John M. McIntyre
John M. McIntyre
Pa I.D. No 78739
Joel P. Aaronson
Pa. I.D. No. 28067
Reed Smith, LLP
225 Fifth Avenue
Pittsburgh, PA  15222
Attorney for Plaintiffs
Cranberry Promenade, Inc.
NAP Associates, Inc.,
NAP Associates 2, Inc. and
Thomas W. Petrarca